UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-60269-CIV-SCOLA/OTAZO-REYES

MOISES ORE and NOEMI ORE,

Plaintiffs,

v.

TRICAM INDUSTRIES, INC. and
HOME DEPOT USA, INC.,

Defendants.
_____/

## ORDER ON PLAINTIFF'S *DAUBERT* MOTION

THIS CAUSE came before the Court upon Plaintiff Moises Ore's ("Plaintiff" or "Ore") *Daubert* Motion [D.E. 87] seeking to exclude: (1) portions of the opinions of Defendants Tricam Industries, Inc. ("Tricam") and Home Depot USA, Inc.'s ("Home Depot") (collectively, "Defendants") ladder expert, John B. Ver Halen, P.E. ("Ver Halen"); and (2) the addendum to the compulsory medical examination report of Rolando Garcia, M.D. ("Dr. Garcia").[1] Plaintiff's *Daubert* Motion was referred to the undersigned by the Honorable Robert N. Scola, Jr., United States District Judge, "to be heard and determined, consistent with 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of the Local Magistrate Judge Rules" [D.E. 98]. The undersigned held an evidentiary hearing on Plaintiff's *Daubert* Motion on July 2, 2015 (hereafter, "*Daubert* hearing") [D.E. 128]. For the reasons stated below, the undersigned GRANTS IN PART and DENIES IN PART Plaintiff's *Daubert* Motion.

---

[1] Plaintiff's challenge to Dr. Garcia's addendum to his original report is not predicated on *Daubert*. Rather, it has to do with the timeliness of the addendum and is predicated on Rules 26 and 37(c)(1) of the Federal Rules of Civil Procedure and the Court's Amended Scheduling Order [D.E. 63]. Therefore, the undersigned treats this matter separately at the end of the *Daubert* analysis.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 21, 2013, Ore and his wife, Noemi Ore, commenced this action in state court with the filing of a Complaint against Defendants [D.E. 1-5]. On February 4, 2014, Tricam removed the action on the basis of diversity jurisdiction with the consent of Home Depo [D.E. 1].

Ore alleges that, on April 6, 2012, he fell and was injured while using a ladder placed in the stream of commerce by Tricam and Home Depot. According to Ore, the ladder was equipped with rivets that held movable joints together at various points, and one or more of the rivets failed under normal use, causing the ladder to fail and Ore to fall.[2]

At the time of the accident, Ore was employed by Tire Kingdom. Ore testified at his deposition that he climbed the 12 foot fiberglass ladder at issue, grasped the top tire of a four-tire stack and threw it to the floor. He then descended the ladder to obtain information about the tire.[3] Afterwards, he climbed back up the ladder and reached for a second tire. It was at that point that he fell and lost consciousness. A co-worker found Ore and two tires on the floor some feet away from the ladder. Although the ladder was still upright, the spreader brackets between the rails were bent, one of them inward and downward and the other one inward.

Ore seeks to recover damages for bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition, lost earnings in the past and loss of earning capacity in the future.

Ore brings claims against Tricam and Home Depot, respectively: for strict liability

---

[2] Discovery has shown that only one particular rivet failed. Due to a manufacturing defect, the hole for inserting that rivet on the ladder's right rear rail was placed too low, thereby subjecting the rivet to shearing forces and resulting in the rivet's metal fatigue.

[3] A customer wanted "fresh rubber" tires and Ore was checking tire labels for their dates.

2

based on manufacturing defect, design defect and failure to warn; and for negligent design, manufacture and warning. In addition, Noemi Ore brings claims for loss of consortium against Tricam and Home Depot, respectively.

Defendants have retained Ver Halen to offer ladder expert testimony. In his initial expert report, dated October 8, 2014, Ver Halen offered the following opinions:

1. The subject ladder design was reasonably safe for its normal intended use. It met the requirements of ANSI and OSHA.[4]

2. The subject ladder was manufactured with some holes positioned out-of-tolerance. As a result, the rivet connecting the right rear rail to the top cap had excessive loading that resulted in a fatigue failure.

3. When the rivet failed is not known. The ladder could have been used without this rivet without problem.

4. Sudden failure of this rivet would not have resulted in noticeable movement of the ladder, and would not have caused this accident.

5. The actions that Mr. Ore took on this ladder were dangerous, and resulted in his accident.

See Ver Halen Expert Report [D.E. 41 at 12]. In his rebuttal report, dated October 29, 2014, Ver Halen opined that, based on wear marks on the inside of the ladder's top cap, "the rivet failed sometime prior to the accident." Id. at 21.

In his *Daubert* motion, Plaintiff challenges the following portions of Ver Halen's opinions: (1) the rivet failed sometime prior to the accident ("timing of the rivet failure"); (2) the ladder could be used without the rivet (the "screwdriver test"); (3) sudden rivet failure would not have resulted in noticeable movement of the ladder (the "sledgehammer test"); and (4) the cause of the accident was Ore's actions of throwing down tires. Ver Halen has produced video demonstrations of the "screwdriver test" and the "sledgehammer test" in support of his opinions. See Plaintiff's Notice of Filing [D.E. 101].

---

[4] "ANSI" is the American National Standards Institute. See http://www.ansi.org. "OSHA" is the Occupational Safety and Health Administration. See https://www.osha.gov.

## *DAUBERT* STANDARDS

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A party who seeks to admit expert testimony bears the burden of laying the proper foundation for its admissibility by a preponderance of the evidence. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). Thus, before expert testimony may be admitted as evidence at trial pursuant to Rule 702 of the Federal Rules of Evidence, the district court must act as a gatekeeper and screen the proffered evidence. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596-97 (1993). In the Eleventh Circuit, this gatekeeping function must be performed as follows:

> [I]n determining the admissibility of expert testimony under Rule 702, [the court must] engage in a rigorous three-part inquiry [and] must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)). See also, McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002) (The gatekeeping function requires the trial court "to conduct an exacting analysis of the proffered expert's methodology" to ensure it

4

meets the standards of admissibility under *Daubert*.). However, a "district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (citing Allison, 184 F.3d at 1311). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Allison, 184 F.3d at 1311.

In this case, Plaintiff does not challenge Ver Halen's qualifications as a ladder expert. Further, Plaintiff does not contend that Ver Halen's testimony will not assist the trier of fact; i.e., that it is not relevant. Johnson v. Bush, Case No. 00-3542-CIV, 2002 WL 34355950, at *1 (S.D. Fla. Apr. 19, 2002) ("To be admissible, expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance."). Therefore, the undersigned's task is limited to assessing the reliability of Ver Halen's challenged opinions.

## CHALLENGES TO VER HALEN'S OPINIONS

According to Ore, Ver Halen's opinion that the rivet failed before the accident ("timing of the rivet failure") is not based on scientific procedure or testing and is not predicated on the evidence that has been gathered in the case. Ore also contends that the conditions of the "screwdriver test" and the "sledgehammer test" were not substantially similar to those at the time of the accident and that the results of the "sledgehammer test" were based on Ver Halen's subjective impression without any measurements. Finally, Ore challenges Ver Halen's opinion that the cause of the accident was Ore's actions of throwing down tires as lacking in scientific basis.

### 1. *Challenged opinion re: timing of the rivet failure*

At the *Daubert* hearing, Ver Halen explained that, due to the improper location of the

5

rivet, the top back edge of the right rear rail was pushed up into the ladder's top cap. Ver Halen examined photographs of the underside of the ladder's top cap and opined that the amount of wear caused before the rivet fractured was similar to that caused after the rivet fractured. Ore argues that Ver Halen's visual examination of photographs without scientific testing renders the opinion unreliable. He also argues that Ver Halen did not take into account testimony regarding the condition of the ladder prior to the accident and potential wear and damage to the ladder that may have occurred between the time of the accident in 2012 and the time when the photographs were taken. However, given Ver Halen's unchallenged qualifications as a ladder expert, these arguments do not justify exclusion of his expert opinion on the timing of the rivet failure. That opinion can best be challenged at trial through vigorous cross-examination and the presentation of additional evidence. Allison, 184 F.3d at 1311. Therefore, the undersigned denies Plaintiff's *Daubert* Motion as to Ver Halen's opinion regarding the timing of the rivet failure.

### 2. *Challenged "screwdriver test"*

Ver Halen conducted the "screwdriver test" to further support his opinion that the rivet failed prior to Plaintiff's accident rather than at the time of the accident. Ver Halen has produced a video of that test, which the undersigned has reviewed. For the "screwdriver test," Ver Halen used a ladder like the one at issue, with the corresponding rivet removed and a round shaft inserted in its place. He climbed the ladder and had an assistant remove the shaft. The ladder did not move or shift either initially or after the assistant climbed the ladder behind him. However, as argued by Ore, the circumstances of the "screwdriver test" were not substantially similar to those present at the time of Plaintiff's accident because the rivet hole in the ladder used for the "screwdriver test" was not too low as in the accident ladder. This lack of similarity renders the "screwdriver test" unreliable, hence inadmissible under Fed. R. Civ. P. 702 and *Daubert*. See Sorrels v. NCL (Bahamas) Ltd. No. 13-21413-CIV, 2013 WL 6271522, at *6

6

(S.D. Fla. Dec. 4, 2013) (excluding as unreliable expert opinion based on circumstances that were different from those present at the time of the accident at issue).

### 3. *Challenged "sledgehammer test"*

Ver Halen conducted the "sledgehammer test" to counter Plaintiff's expert's opinion that the failure of the rivet, assuming it occurred at the time of the accident, caused the ladder to shift and Ore to fall. Ver Halen has produced videos of that test (take 1 and take 2), which the undersigned has reviewed. Ver Halen used the same ladder that he used for the "screwdriver test," with the missing rivet but with no shaft inserted in its place. He attached a sledgehammer weighing 2.85 pounds to the ladder's top cap. He climbed the ladder and dropped the sledgehammer approximately 5 inches, which resulted in double the amount of energy that Plaintiff's expert calculated would be released by the rivet's failure. According to Ver Halen, the dropping sledgehammer caused no significant movement of the test ladder, so that the rivet failure could not have resulted in the actual ladder's shift to such an extent as to make Plaintiff lose his balance and fall.

As with the "screwdriver test," the conditions of the "sledgehammer test" were not substantially similar to those at the time of the accident because the rivet hole in the ladder used for the "sledgehammer test" was not too low as in the accident ladder. This lack of similarity renders the "sledgehammer test" unreliable, hence inadmissible under Fed. R. Civ. P. 702 and *Daubert*. See Sorrels, 2013 WL 6271522, at *6.

### 4. *Challenged causation opinion*

Finally, Ver Halen opined that the cause of the accident was Ore's actions of throwing down tires. According to Ver Halen, the second tire that Ore was reaching for fell on the ladder's spreader bracket that was bent downward and inward and the force of the dropping tire caused the ladder to shift and Ore to fall. Ver Halen further opined that deformation of this

7

spreader bracket would have required about 100 to 125 pounds of force and that a dropping tire would have that amount of force based on prior testing done by Ver Halen for another case. At the evidentiary hearing, the undersigned asked Ver Halen to explain how a falling tire could have physically fit between the ladder's rails to cause the downward deformation to the spreader bracket and then bounce to the location where it was found, some feet away from the ladder. Ver Halen had no answer. Therefore, the undersigned concludes that Ver Halen's causation opinion is not reliable for purposes of Rule 702 and *Daubert*.

Based on the foregoing, the undersigned concludes that Ver Halen's opinion on the timing of the rivet failure, based on his inspection of photographs of the inside of the ladder's top cap, is admissible under *Daubert*, subject to vigorous cross-examination and the presentation of additional evidence. Allison, 184 F.3d at 1311. However, the undersigned concludes that the "screwdriver test," the "sledgehammer test" and the causation opinion do not meet the admissibility requirements under Rule 702 and *Daubert*.

## CHALLENGES TO DR. GARCIA'S ADDENDUM

As previously noted, Plaintiff makes a timeliness challenge to Dr. Garcia's addendum to his initial compulsory medical examination report pursuant to Rules 26 and 37(c)(1) of the Federal Rules of Civil Procedure and the Court's Amended Scheduling Order [D.E. 63]. In his original report, Dr. Garcia had stated that he could not find evidence that Ore had sustained a traumatic injury to his cervical spine as a result of his fall. Dr. Garcia issued the addendum that Plaintiff seeks to strike after he reviewed various MRI studies conducted by Defendants' other expert, Dr. Brown. In the addendum, Dr. Garcia opined that Ore had a degenerative disc condition that existed prior to the time of the accident. At the *Daubert* hearing, Plaintiff's counsel acknowledged that he received Dr. Garcia's addendum one week prior to Dr. Garcia's deposition and that he had ample opportunity to question Dr. Garcia about it at the deposition,

which took place in early May, 2015. Plaintiff's counsel now complains, however, that he was deprived of the opportunity to retain an expert to rebut Dr. Garcia's addendum.[5] However, given Dr. Garcia's original opinion that Ore's cervical spine ailment predated the accident, it is not clear that there was any element of surprise in the addendum. Moreover, Plaintiff's counsel had the opportunity to seek leave to retain an expert back in mid-May, 2015, when he filed the *Daubert* Motion seeking to strike the addendum. Therefore, the undersigned concludes that the claimed prejudice resulting from the addendum, if any, is of Plaintiff's counsel's own making.

## CONCLUSION

Having considered the pertinent portions of the record, the parties' arguments, and the applicable law, it is

ORDERED AND ADJUDGED that Plaintiff's *Daubert* Motion is GRANTED IN PART and DENIED IN PART as follows. Ver Halen may provide expert testimony at trial on the timing of the rivet failure, but "screwdriver test," the "sledgehammer test" and Ver Halen's causation opinion are not admissible under Rule 702 and *Daubert*. Additionally, Dr. Garcia's addendum is not subject to being stricken pursuant to Rules 26 and 37(c)(1) of the Federal Rules of Civil Procedure and the Court's Amended Scheduling Order.

DONE AND ORDERED in Chambers at Miami, Florida this 20th day of July, 2015.

*Alicia Otazo Reyes*
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Robert N. Scola, Jr.
     Counsel of Record

---

[5] Plaintiff is only relying on the medical opinion of his treating physician, Dr. Pasarin.

9